IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Allen Christopher Epps,<br><br>        Plaintiff,<br><br>v.<br><br>Erik Laudenschlager, Steven Nagel, Mark Kline, Caroline Folven, Minot Police Department, Minot, City of, Tony Mueller, and Sports on Tap,<br><br>        Defendants. | Case No. 4:14-cv-48<br><br>**ORDER ADOPTING<br>REPORT AND RECOMMENDATION** |

The court has received a Report and Recommendation from the Honorable Alice R. Senechal, United States Magistrate Judge, recommending that the defendants' motions for summary judgment be granted and that Allen Christopher Epps's ("Epps") complaint be dismissed with prejudice.[1] Epps has objected to the Report and Recommendation.[2] His objection raises five discreet objections to the Report and Recommendation.

First, Epps claims that the Magistrate Judge erroneously concluded that there was insufficient evidence to create an issue of fact for the jury on the question of an unconstitutional policy, custom or practice of the Minot Police Department.

Second, Epps claims that the Magistrate Judge committed error in finding qualified immunity where (a) a white co-combatant Kyle Dalby was ignored at the scene while he, Epps, was arrested; (b) the officers failed to process the crime scene in a way

---

[1] Doc. #82.

[2] Doc. #86.

1

that preserved the relevant evidence; (c) one of the officers, Mark Kline, failed to file a police report covering the incident; and (d) the charge of Dalby with disorderly conduct demonstrates a clear bias against Epps who was charged with terrorizing.

Third, Epps claims that the Magistrate Judge erroneously dismissed his claim for Malicious Prosecution.

Fourth, Epps claims that the Magistrate Judge erroneously dismissed his state law claims for Intentional Infliction of Emotional Distress.

Fifth, Epps asserts that the Magistrate Judges erroneously dismissed his claims of negligence and negligent infliction of emotional distress under state law.

Because each of Epps's claims are based on a misunderstanding of the applicable law, each of his objections is DENIED and the Report and Recommendation is ADOPTED without modification.

**1. EPPS HAS FAILED TO ESTABLISH SUFFICIENT EVIDENCE TO CREATE A JURY QUESTION ON THE ESTABLISHMENT OF AN UNCONSTITUTIONAL CUSTOM, POLICY OR PRACTICE ON THE PART OF THE MINOT POLICE DEPARTMENT.**

Epps first contends that the Magistrate Judge incorrectly found Epps failed to establish an unconstitutional policy, custom, or practice of the Minot Police Department. Specifically, Epps argues that the Minot Police Department treated him differently than Kyle Dalby ("Dalby") because of his race and that jury should be allowed to consider whether this evidence alone is sufficient to establish a *de facto* unconstitutional custom.[3] Epps asserts that a jury question exists because "If the law was enforced unilaterally, the defendants would be forced to reconcile with the jury as to

---

[3] Id. at ¶¶ 2-3.

why I and my party were the only ones treated as criminals as result of the 911 call to the scene."[4] From this allegation Epps draws the conclusion–which he claims a jury would rationally draw as well–that he was subjected to disparate treatment as a result of race. This contention is based on a false premise. In fact both Dalby and Epps were arrested on the night in question.[5] While the charges against each man were different, those charging decisions were based on the separate observations made by the police at the scene and are more than adequately explained in the record. Thus, Epps's claims of disparate treatment are simply unsustainable on the record before the Magistrate Judge. There is no evidence sufficient to allow the finder of fact to conclude that disparate treatment took place on the evening in question sufficient to give rise to any constitutional claim–let alone a custom, policy or practice.

Even assuming, *arguendo*, that the Minot Police treated him differently than Dalby, Epps has not pointed to any policy, practice or the custom that compelled the disparate treatment. Instead he points to nothing other than this single incident, which under the circumstances present in this case is insufficient to establish an unconstitutional policy, practice or custom.

Epps also concedes that the policy manual of the police department is appropriate and does not create an unconstitutional custom, practice or policy.[6] He has pointed to no other fact, other than the allegedly disparate treatment of Dalby supporting his claim

---

[4] Id. at ¶3.

[5] Doc. #65-3 at p. 2 (criminal history of Kyle Dalby, indicating that he was arrested for disorderly conduct due to the fight at Sports on Tap).

[6] Doc. #78 at p. 389-90..

that the Minot Police Department enforced an unconstitutional policy, practice or custom. Under these circumstances, Epps's objection fails as a matter of law.

**2. THE MAGISTRATE JUDGE DID NOT COMMIT ERROR IN FINDING QUALIFIED IMMUNITY FOR ALL MUNICIPAL DEFENDANTS.**

Epps asserts that the Magistrate Judge incorrectly found that the municipal defendants were entitled to qualified immunity on the false arrest claim because (1) a jury question exists because a white co-combatant, Dalby, was ignored at the scene and he, Epps, a black man, was arrested;[7] (2) officers failed to procure, produce, preserve, and pass on to appropriate entities evidence to support a good faith felony arrest;[8] (3) the record shows that officer Mark Kline, who allegedly stated that Epps did not issue the threat, was the only officer who did not file a police report;[9] and (4) the fact that Dalby was charged with disorderly conduct and Epps was charged with felony terrorizing demonstrates a clear unconstitutional racial bias rendering qualified immunity inapplicable.[10]

A. Dalby was Arrested at the Scene and No Disparate Treatment Occurred.

Epps's first point is simply erroneous. The record makes plain that Dalby was in fact arrested on the evening in question and charged with disorderly conduct.[11] The question then turns to Epps's assertion that he was disparately treated. Arresting

---

[7] Doc. #86 at ¶4.

[8] Id. at ¶9.

[9] Id. at ¶8.

[10] Id. at ¶5.

[11] Doc. #65-3 at p. 2.

officers are not required to "conduct a mini trial" at the scene[12] and, as the Magistrate Judge correctly found, the facts known to them at the time satisfied probable cause to arrest Epps.[13]

### B. Epps's Claim that the Crime Scene was not Properly Preserved is without Merit.

Epps next claims that the officers are not entitled to qualified immunity because they failed to properly preserve the crime scene. Epps points to no facts supporting this claim other than his claim that the police reports are not entirely consistent and that Mark Kline did not file a police report. He contends that a "cover up" is occurring. While the court does not doubt Epps's sincerity of belief, a mere suspicion is not evidence. Epps has pointed to no actual evidence to support his claim of a cover-up or that any evidence has been unconstitutionally suppressed. Epps's suspicion is insufficient as a matter of law to give rise to a jury question.

### C. Kline's failure to file a Police Report is Insufficient as a Matter of Law to Defeat the Existence of Probable Cause for Epps's Arrest.

It is indisputable that Officer Mark Kline did not file a police report concerning the evening in question. Epps contends that this is evidence of a massive cover-up because Kline gave information to Officer Laudenschlager that Epps did not make the threat in question. This point fails because, even if Kline did tell Officer Laudenschlager that Epps did not make the threat, the facts as known to Laudenschlager would still have

---

[12] Smithson v. Aldrich, 235 F.3d 1058, 1064 (8th Cir. 2000) (citing Morrison v. United States, 491 F.2d 344, 346 (8th Cir. 1974)).

[13] Doc. #82 at pp. 8-10.

5

justified a reasonably prudent person in believing Epps committed the offense.[14] A 9-1-1 call reported a fight at Sports on Tap, where a black man had a gun.[15] While handcuffed, Epps admitted ownership of the gun.[16] When Officer Laudenschlager arrived, he thought he heard Epps issue a threat to Dalby.[17] Epps does not dispute that someone made the threat, he simply denies that he made it.[18] A reasonable officer under these circumstances had probable cause to arrest Epps for terrorizing. While the purported observation of Kline would be exculpatory evidence that needed to be disclosed to the defense, it does not defeat Laudenschlager's independent observations. Two people observing the same incident will often recall that event differently. The evidence known on the evening in question was more than sufficient to support a finding of probable cause on a charge of terrorizing under North Dakota law.

 D.  Epps Cannot Rely on Charges against a Another Person for Determining His Probable Cause.

Epps asserts that qualified immunity is inappropriate because the misdemeanor disorderly conduct charges clearly show that he was overcharged and that the only logical reason for this is racial bias. As stated above, the record clearly establishes the

---

[14] Smithson v. Aldrich, 235 F.3d 1058, 1062 (8th Cir. 2000) ("Probable cause exists if 'the totality of facts based on reasonably trustworthy information would justify a prudent person in believing the individual arrested had committed . . . an offense' at the time of the arrest." (quoting Hannah v. City of Overland, Mo., 795 F.2d 1385, 1389 (8th Cir. 1986)(quoting United States v. Wallraff, 705 F.2d 980, 990 (8th Cir. 1983)))).

[15] Doc. #70-1 (transcript of 9-1-1 call).

[16] Doc. #78 at pp. 212, 216.

[17] Doc. #70-6, Officer Laudenschlager's Affidavit of Probable Cause.

[18] Doc. #78 at p. 337-38.

existence of probable cause for a charge of terrorizing. Epps completely fails to show any fact that would support a rational conclusion that the misdemeanor charges against Dalby shows an improper finding of probable cause in Epps's case. Charges of another person have no bearing upon the probable cause determination as against Epps unless he proves something further: that the difference in charging was the result of unconstitutional animus. In this case Epps has produced nothing more than his own suspicions.

**3. THE MAGISTRATE JUDGE DID NOT COMMIT ERROR BY DISMISSING EPPS'S CLAIM FOR MALICIOUS PROSECUTION.**

Epps next claims that the Magistrate Judge improperly dismissed his claim for Malicious Prosecution. Epps essentially argues that the Municipal defendants improperly (1) passed on prejudicial information to his employer;[19] (2) that he was singled out for disparate treatment as Dalby was charged with disorderly conduct and he was charged with terrorizing;[20] (3) the affidavits of probable cause are contradictory on their face and evidence of malicious prosecution;[21] and (4) the Magistrate Judge ignored the discrepancies in the official reports.[22]

Under § 1983, if malicious prosecution is a cognizable cause of action–an open question-- probable cause alone is a sufficient basis to defeat the claim.[23] Under North

---

[19] Doc. #86 at ¶7.

[20] Id. at ¶5.

[21] Id. at ¶10.

[22] Id. at ¶11.

[23] Harrington v. City of Council Bluffs, 678 F.3d 676, 679 (8th Cir. 2012).

7

Dakota Law,[24] Epps is unable to meet three of the essential elements of a malicious prosecution claim. First he must establish a criminal proceeding was instituted or continued by a defendant against the plaintiff.[25] Epps fails to meet this element because the charge was brought and maintained by the Ward County States Attorney who is not a party to this action. The second element that Epps fails to satisfy is the requirement that there is an absence of probable cause. Finally, Epps fails to meet a showing that the prosecution was the result of malice as opposed to an intention to bring a lawbreaker to justice.

**4. THE MAGISTRATE JUDGE DID NOT COMMIT ERROR BY DISMISSING THE INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM.**

In order to have a cognizable claim for Intentional Infliction of Emotional Distress, Epps must establish "extreme and outrageous conduct."[26] Extreme and outrageous conduct "is narrowly limited to outrageous conduct which exceeds 'all possible bounds of human decency'."[27] In other words, before liability for intentional infliction of emotional distress lies, the conduct complained of must be "atrocious and utterly intolerable in a civilized community."[28]

---

[24] Richmond v. Haney, 480 N.W.2d 751, 755 (N.D. 1992) (stating the essential elements as "1. A criminal proceeding instituted or continued by the defendant against the plaintiff. 2. Termination of the proceeding in favor of the accused. 3. Absence of probable cause for the proceeding. 4. 'Malice,' or a primary purpose other than that of bringing an offender to justice").

[25] Id.

[26] Muchow v. Lindblad, 435 N.W.2d 918, 924 (N.D. 1989).

[27] Id.

[28] Id.

As examples of outrageous conduct Epps points to two "facts." First he claims that he has been effectively rendered a felon because the charges were filed, dismissed without apology and that prejudicial information was passed on to his employer, the United States Air Force.[29] As discussed above, the charges were filed with full probable cause. Epps points to the outrage of the failure to apologize and the passing on of truthful, if controverted, information.[30] None of these actions remotely approaches satisfying the atrocious conduct that is utterly intolerable in a civilized society standard. At most they show that the defendants were mistaken–which would be insufficient even to support a claim of negligence.

**5. EPPS HAS FAILED TO ESTABLISH A VALID CLAIM FOR NEGLIGENCE OR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS.**

Lastly, Epps objects to the Magistrate Judge's holding that Mueller and Sports on Tap were not negligent as a matter of law. A review of the record reveals a paucity of information that would allow a finder of fact to conclude that the Mueller defendants lacked reasonable cause to believe that Dalby posed a risk to patron safety. Likewise, the undisputed evidence shows that once the altercation erupted the Mueller defendants made reasonable efforts to break up the fight and ejected the combatants separately to try and make sure that the fight did not continue outside the premises. While Epps makes much of a previous incident involving Dalby, there is simply nothing in the record to allow a finder of fact to determine that the previous altercation was of such a nature that the Mueller defendants should have anticipated the sort of brawl described by Epps.

---

[29] Doc. #86 at ¶12

[30] Id.

Because Epps has failed to establish any fact in dispute in the record that would give rise to a material issue to be decided by the finder of fact, the Magistrate Judge correctly dismissed the claim.

Finally, Epps asserts that the court improperly dismissed his negligent infliction of emotional distress claim. North Dakota law requires a showing of a bodily harm in order to establish a claim for negligent infliction of emotional distress.[31] In his deposition Epps denied having any bodily injury beyond a bloody lip which healed quickly. He asserted that he had no need for psychiatric or psychological services. In short, Epps described the absence of any bodily harm sufficient to support a claim for damages under a theory of negligent infliction of emotional distress.

Having reviewed the Report and Recommendation, conducted a *de novo* review of Epps's objections, as well as the entire record in this matter, the court finds that the Magistrate Judge's analysis of the claims and recommendations for disposition are consistent with applicable law. The court further finds that the objections raised by Epps are without legal merit. For the reasons outlined by the Magistrate Judge, the court **ADOPTS** the Report and Recommendation in its entirety. The defendants' motions for summary judgment are **GRANTED**. Epps's complaint is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

---

[31] Hougum v. Valley Mem. Homes, 574 N.W.2d 812, 819 (N.D. 1998).

Dated this 4th day of March, 2016.

                                            /s/ Ralph R. Erickson
                                    Ralph R. Erickson, Chief District Judge
                                    United States District Court